**ROBERTSON TANK LINES, INC.,**
**Appellant,**

**v.**

**Tony J. PAVLOCK, Appellee.**

**No. 14585.**

Court of Civil Appeals of Texas.

Houston.

July 8, 1965.

Rehearing Denied Sept. 9, 1965.

———◆———

Butler, Binion, Rice, Cook & Knapp, Quinnan H. Hodges, Steven C. Oaks, Houston, for appellant.

Brown, Kronzer, Abraham, Watkins & Steely, Bill Allen, Houston, for appellee.

COLEMAN, Justice.

This is a suit for damages by reason of personal injuries sustained by appellee when he was struck by the dome lid of a tank trailer which was being unloaded under air pressure.

The jury found that appellant was negligent in failing "to maintain the dome lid mechanism fastening device on the tank trailer in question in such a condition as the same would have been maintained by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances." The jury also found that appellant was negligent in failing to provide proper inspection of the dome lid fastening device. By their findings the jury absolved appellee of all claimed contributory negligence, and found damages in a substantial sum. Judgment was rendered on the verdict.

Appellant relies for reversal on points charging that the answers made by the jury to all issues were either supported by no evidence or were so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

The tank trailer in question was used to transport hydrochloric acid, diluted to approximately thirty-three (33%) per cent pure acid, to industrial establishments. From time to time loads of used acid with a strength of from two (2%) per cent to six (6%) per cent would be hauled from the Wah Chang Tin Smelter to the Northside Sludge Disposal Plant of the City of Houston, where appellee was employed. On the day in question, January 2, 1962, three loads of the thirty-three (33%) per cent solution were delivered before the trailer was loaded with the weaker solution. McKnight, appellant's driver, testified that he put the dome lid in place after the loading operation was complete and properly tightened a wing nut on a bolt securing a hinged cross bar on top of the lid. It appears that the bolt was fastened to the trailer by a hinge so that it was not necessary to remove the nut in order to loosen the cross bar and remove the lid. He testified that the acid was corrosive and that the nut and bolt, as well as the guide hinges attached to the lid itself, showed evidence of corrosion, but that the nut and bolt tightened properly and appeared to be in good condition.

McKnight then drove the truck and trailer to the Sludge Plant, placed it and connected the outlet line to the city tank and air line to the city air pressure line. Since the city tank was not empty, the trailer could not be unloaded at that time. As was customary he then left intending to return the next day to pick up the truck and empty trailer.

Some two hours later appellee, pursuant to his duty as assistant operator at the plant, turned off the outtake valve at the city tank, opened the intake valve, and turned on the air pressure valve. After observing the operation proceed normally for fifteen minutes, he went in a nearby room to get out of the cold, and to proceed with his other work. Thirty-five minutes later he heard an un-

usual noise and went back to the trailer and found that liquid was running down both sides of the truck. He then took his flashlight and climbed on top of the truck to see exactly where the liquid was escaping so that he could report the trouble intelligently. He testified that he found nothing wrong at the unloading compartment, and walked past it toward the loading compartment. Just as he neared the dome lid, he saw liquid escaping and the lid blew off and hit him causing him to fall to the ground unconscious. He testified that he did not touch the lid or the fastening mechanism. He was taken to a hospital.

The lid was found on the ground some distance from the dome. The wing nut was found on the ground by a city employee who preserved it, and it was introduced into evidence. McKnight was notified and removed the truck and trailer to the shop of appellant.

Appellant's answers to written interrogatories were introduced into evidence. In response to a request for the names of all of appellant's personnel who looked at the fittings on top of the tank trailer following the accident until and including the time any repairs were made, appellant answered, "Bill C. McKnight and R. V. Snodgrass." In reply to the question of the identity of the persons by whom all repairs were made and supervised, appellant answered, "R. V. Snodgrass." Appellant answered that the bolt and wing nut were replaced, and that the repairs were made on January 3, 1962, between 3:45 a. m. and 6:45 a. m. Best, appellant's vice-president, testified that Snodgrass, on the morning immediately following the accident, gave him the bolt, and that he kept it in his office, but he was unable to find it during the trial. He testified later that he had the bolt removed a day or so after the accident and had the bolt examined by Dr. Tonn, who did not testify. Snodgrass testified at the trial that he did not remember cutting off the bolt, but conceded that he couldn't definitely say that he didn't remove it. No employee was produced who recalled removing the bolt.

Both Best and McKnight testified that the bolt appeared normal and in good condition after the accident.

There was testimony that if the dome lid was loose pressure could not build up and that if it became loose while the pressure was on, the air would escape. There was also testimony that pressure in the tank would tighten the bolt and wing nut, but that it could be loosened by a man without tools, possibly by kicking it.

The wing nut produced at the trial was not scored or appreciably deteriorated on the inside. Appellant produced testimony to the effect that if the nut was forced off the bolt by pressure there would be evidence of damage to the threads. There was a nick in the fifth thread that prevented the nut from being tightened past that point on a new bolt produced at the trial.

The testimony showed that the truck was built to withstand pressures of fifty pounds. While one witness testified that the gauge on the city pressure line had a maximum reading of sixty pounds, the testimony of other witnesses make it appear that he was mistaken and that the maximum reading on the guage was thirty pounds. No witness placed the maximum pressure ever obtained at the plant higher than 35 pounds, and tests conducted the day following the accident produced a maximum of 26 pounds.

Appellant contends that the evidence establishes that the wing nut could not have been removed from the bolt unless appellee removed it, and appellee denied touching it. The testimony of McKnight was impeached by an employee of the City who testified that McKnight told him a few days after the accident that "corrosion had eaten the bolt." It is undisputed that the bolt was subjected to the corrosive effect of the thirty-three (33%) per cent acid solution during the loading operations daily. The jury was entitled to place its own construction on the answers made to the written interrogatories and to disregard the explanations offered.

■ There was sufficient evidence from which an inference that the fastening mechanism was so corroded as to be defective could be drawn. Since this device was used each day by appellant's employees, and since a corroded condition of the bolt would be readily apparent, appellant would be charged with knowledge of the condition of the bolt. The jury's answers to the first series of issues on negligence and proximate cause are supported by evidence of probative force. We do not find these answers to be so contrary to the weight and preponderance of the evidence as to be clearly wrong.

We think it unnecessary to discuss at length the second series of negligence issues. Unless the evidence is sufficient to support a finding that the fastening mechanism was defective, a failure to inspect would not be a proximate cause of the accident under the evidence in this case. If the mechanism was defective, as found by the jury, the evidence was clearly sufficient to show that appellant's employees either knew, or reasonably should have known, of the condition. Either the first series of issues is supported by the evidence or neither series is supported.

■ The evidence did not compel findings of contributory negligence. There is no more than a scintilla of evidence that excessive air pressure was present. The weight of the evidence is to the contrary. We cannot say as a matter of law that appellee's failure to turn off the air pressure before mounting the truck was negligence. There was little apparent danger since the solution in the trailer was not explosive and would not burn. There was testimony that the source of the leak could not be discovered unless the pressure was maintained. There was testimony that appellee had to get on top of the truck to see what the trouble was. There was no testimony that any such trouble had been encountered before or that any rules covering such a situation had been promulgated for his guidance. It was necessary that he make a report and it is reasonable that he report the specific trouble.

In view of the preceding review of the evidence, and of our holdings concerning the effect of the evidence, it follows that we are of the opinion that the jury's finding that the occurrence in question was not the result of an unavoidable accident was properly supported by the evidence in this case.

The judgment of the trial court is affirmed.